# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| SCOTT BALFOUR, DON LEE, KULDEEP SINGH, MATTHEW TEMPLON, and SHELIA VORHEIS, | Case No. 23-cv-67-CFC |
| Plaintiffs, | |
| v. | |
| iFIT HEALTH AND FITNESS INC, a Delaware Corporation, | |
| Defendant. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Dated: October 24, 2024

Daniel O. Herrera
Alex Lee
Cafferty Clobes Meriwether
& Sprengel LLP
1350 S. LaSalle St., Suite 3200
Chicago, Illinois 60603
Telephone: (312) 782-4880
dherrera@caffertyclobes.com
alee@caffertyclobes.com

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
Telephone: 302-777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Joseph G. Sauder
Joseph B. Kenney
Sauder Schelkopf LLC
1109 Lancaster Avenue
Berwyn, Pennsylvania 19312
Telephone: (610) 200-0581
jgs@sstriallawyers.com
jbk@sstriallawyers.com
*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................... 1

II.  FACTUAL BACKGROUND ...................................................................... 2

    A.   Plaintiffs' Allegations and Pre-Litigation Investigation ...................... 2

    B.   History of the Litigation ...................................................................... 3

    C.   The Parties' Settlement Negotiations .................................................. 4

    D.   The Class .............................................................................................. 5

    E.   The Settlement's Benefits .................................................................... 6

        1.   Repair Remedy ............................................................................ 7

        2.   Refund Remedy ........................................................................... 7

        3.   Credit Remedy ............................................................................ 7

        4.   Streaming Content Memberships ................................................ 8

        5.   Customer Satisfaction Program .................................................. 8

    F.   Attorneys' Fees, Costs, and Service Awards ....................................... 9

    G.   Notice to Class Members ..................................................................... 9

    H.   Opt-Outs and Objections ................................................................... 11

    I.   The Release ......................................................................................... 12

    J.   The Preliminary Approval Order ....................................................... 12

III. ARGUMENT .......................................................................................... 13

    A.   The Settlement is Entitled to a Presumption of Fairness ................... 14

    B.   The *Girsh* Factors Support Preliminary Approval ............................ 16

    C.   The *Prudential Factors* ..................................................................... 25

    D.   The Notice Plan Satisfied Due Process and Rule 23(e) ..................... 28

    E.   The Court Should Reaffirm Certification of the Class ...................... 29

    F.   The Unopposed Motion for an Incentive Award and Fee Award
       Should be Approved ........................................................................... 30

IV.   CONCLUSION..................................................................................................30

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)......................................................24

*California v. Teva Pharm. Indus.*, 2020 WL 3128027 (E.D. Pa. June 10, 2020)..............24

*E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884 (7th Cir. 1985) ...........................20

*Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010)...............................................13

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) ....................................................................16

*Huffman v. Prudential Ins. Co. of Am.*, 2019 WL 1499475 (E.D. Pa. Apr. 5, 2019)........16

*In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013) .......................................26

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001) ...................................................14

*In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.*,
    333 F.R.D. 364 (E.D. Pa. 2019) ....................................................................................26

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ............................................................................................13

*In re National Football League Players Concussion Injury Litig.*,
    821 F.3d 410 (3d. Cir. 2016) ...............................................................................14, 24, 28

*In re Prudential Ins. Co. Am. Sales Practice Litig.*,
    148 F.3d 283 (3d Cir. 1998) .................................................................................18, 25, 26

*In re Shop-Vac Mktg. & Sales Practices Litig.*,
    2016 WL 3015219 (M.D. Pa. May 25, 2016) ...............................................................24

*In re Sunrise Sec. Litig.*, 131 F.R.D. 450 (E.D. Pa. 1990).................................................18

*In re Vitamins Antitrust Litig.*, 2000 WL 1737867 (D.D.C. Mar. 31, 2000)....................20

*In re Wilmington Tr. Sec. Litig.*,
    2018 WL 6046452 (D. Del. Nov. 19, 2018)....................................14, 15, 17, 21, 22, 26

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996)........................................................................20

*McDermid v. Inovio Pharms., Inc.*,
    2023 WL 227355 (E.D. Pa. Jan. 18, 2023) ....................................14, 15, 17, 18, 22, 25

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950) .......................................................29

*O'Hern v. Vida Longevity Fund, LP*, 2023 WL 3204044 (D. Del. May 2, 2023) ......*passim*

*Pagano et al. v. NordicTrack Inc et al.*, Case No. 1:23-cv-00058 (D. Utah.).............12, 22

*Parsons v. Brighthouse Networks, LLC*, 2015 WL 13629647 (N.D. Ala. Feb. 5, 2015)..19

*Rougvie v. Ascena Retail Grp., Inc.*, 2016 WL 4111320 (E.D. Pa. July 29, 2016)...........19

*Rowe v. E.I. DuPont de Nemours & Co.*, 2011 WL 3837106 (D.N.J. Aug. 26, 2011) .....18

*Shapiro v. All. MMA, Inc.*, 2018 WL 3158812 (D.N.J. June 28, 2018) ............................14

*Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115 (3d Cir. 1990)................................................18

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011) ....................................................24

*Udeen v. Subaru of Am., Inc.*, 2019 WL 4894568 (D.N.J. Oct. 4, 2019)....................15, 16

*United States v. City of Miami*, 614 F.2d 1322 (5th Cir.1980)..........................................20

*Vinh Du v. Blackford*, 2018 WL 6604484 (D. Del. Dec. 17, 2018) ...............14, 15, 22, 29

*Vista Healthplan, Inc. v. Cephalon, Inc.*, 2020 WL 1922902 (E.D. Pa. April 21, 2020)..27

*Yaeger v. Subaru of Am., Inc.*, 2016 WL 4541861 (D.N.J. Aug. 31, 2016)....17, 21, 22, 23

## **STATUTES**

Class Action Fairness Act, 28 U.S.C. § 1715 ..............................................................22, 13

Fed. R. Civ. P. 23(e) .........................................................................................................10

Fed. R. Civ. P. 23(e)(2) .....................................................................................................10

S.A. § II.A.10 .......................................................................................................................5

S.A. § II.A.9 ....................................................................................................................4, 18

S.A. § IV.A ........................................................................................................................5, 13

S.A. § IV.B ............................................................................................................................6

S.A. § IV.C ............................................................................................................................7

S.A. § IX.C ..........................................................................................................................10

S.A. § V ..............................................................................................................................7, 8

S.A. § V(D) ...........................................................................................................................7

S.A. § V(D)(2) ......................................................................................................................7

## **OTHER AUTHORITIES**

*Fed. Judicial Ctr, Judges' Class Action Notice And Claims Process Checklist And Plain Language Guide 3* (2010) ..................................................................................................8

## I.    INTRODUCTION

On February 27, 2024, Plaintiffs Scott Balfour, Don Lee, Kuldeep Singh, Matthew Templon, and Shelia Vorheis (collectively, "Plaintiffs") moved for preliminary approval of the proposed class action settlement and for certification of the Class in the above-captioned action.[1] The Court preliminarily approved the Settlement Agreement on April 5, 2024, finding that the Settlement's terms were "fair, reasonable, and adequate" and that the Class should be given notice ("Prelim. Approval Order"). Pursuant to that Order, Epiq Global ("Epiq"), the Settlement Administrator, implemented an extensive Court-approved Notice Program that, *inter alia*, delivered direct notice of the settlement to approximately 2,072,370 Class Members, representing 84.7% of the Class. Declaration of Cameron R. Azari, Esq. of Epiq Global (hereafter, the "Azari Declaration") ¶ 17. The response of the Class has been overwhelmingly positive: only three (3) Class Members submitted objections, and only six (6) requested exclusion.

The Class' near-universal support is unsurprising. The Settlement provides meaningful and immediate relief to Class Members. Class Members still in possession of a Class Device that failed due to the defect are entitled to no-cost

---

[1] The capitalized terms used herein are defined in the Settlement Agreement. *See* D.I. 28-1, Ex. A (hereafter, "SA").

repairs, while those who previously paid iFIT for repairs may claim a full refund. Any Class Member who disposed of a failed Class Device prior to receiving notice of the Settlement are entitled to a 20% credit on the purchase of new iFIT fitness equipment (up to $600). Based on the Class' overwhelming support for the Settlement, as evidenced by the minimal objections and opt-outs, and the comprehensive and substantial relief the Settlement provides to Class Members, Plaintiffs respectfully request that the Court grant final approval so that Class Members may avail themselves of the considerable benefits to which the Settlement entitles them.

## II.    FACTUAL BACKGROUND

### A. Plaintiffs' Allegations and Pre-Litigation Investigation

Plaintiffs are residents of Ohio, California, Washington, and Florida. D.I. 1 ¶¶ 16, 26, 37, 48, 59. Each Plaintiff purchased a Class Device[2] for prices ranging from $825 to $1,740. D.I. 1 ¶¶ 19, 29, 40, 51, 62. Prior to making their purchases, each researched and relied on advertising statements detailing their Device's streaming features. *Id*. In November of 2022, Plaintiffs' Class Devices began to become inoperable. D.I. 1 ¶¶ 22, 32, 43, 54, 65.

---

[2] Class Devices are unique because they come equipped with a built-in tablet that enables digital interactivity during exercise.

Class Counsel thereafter commenced an extensive pre-suit investigation, interviewing numerous putative class members, collecting and reviewing relevant documents, and consulting with experts. Joint Declaration of Joseph G. Sauder and Daniel O. Herrera, (hereafter, "Counsel Decl.") ¶ 2. The Complaint reflects these efforts, and includes detailed allegations concerning Class Devices and how and why the alleged Defect causes them to prematurely fail: specifically, a software error consumed the Devices' flash memory and crashed the tablets used to operate the Devices, rendering them inoperable. D.I. 1 ¶¶ 94-105. Plaintiffs further allege that iFIT failed to properly test the software update, instead pushing it out to unsuspecting Class Members. D.I. 1 ¶ 106. Plaintiffs thereafter brought suit on behalf of themselves and similar situated owners of Class Devices.

## B. History of the Litigation

Plaintiffs filed their initial Complaint on January 20, 2023. D.I. 1. iFIT executed a waiver of service on January 27, 2023.  D.I. 5. On February 24, 2023, before iFIT was required to file an answer, the parties filed a joint stipulation to stay the case for 120 days to "explore alternative avenues in hopes of resolving the case." D.I. 6 ¶ 6. The court issued an oral order granting the stipulation and set iFIT's deadline to respond to Plaintiffs' complaint to July 28, 2023. Given the progress the parties made at the June 20, 2023 mediation with the Hon. Layn R. Phillips (Ret.) (described below), the parties submitted another joint stipulation to stay the case for

90 days on July 24, which the Court entered on July 25, 2023. D.I. 9-10. The parties then filed another joint stipulation on October 25 to stay the case for an additional 60 days, which the Court entered the same day. D.I. 10-11.

### C. The Parties' Settlement Negotiations

Prior to commencing settlement discussions, the parties exchanged informal discovery concerning the alleged Defect, the scope of the resulting issues, and corrective actions. This discovery included highly technical engineering reports and studies, including an engineering report commissioned by iFIT itself. Counsel Decl. ¶¶ 3–4. Discovery confirmed that a software update released in June 2021 contained a "bug" that caused excessive wear to a hardware chip embedded in the Class Devices, which caused the Defect. *Id.* ¶ 4. On January 23, 2023, iFIT released a software update that resolved the bug, remedying the Defect's root cause. *Id.* The parties then turned their attention to negotiating relief for those whose Devices had been or would be rendered inoperable due to the Defect. *Id.* ¶ 5. These initial discussions proved contentious, and counsel for the parties met and conferred multiple times over several months. *Id.*

After months of preliminary negotiations and information exchanges, the parties participated in a full-day mediation before the Hon. Layn R. Phillips (Ret.) of Phillips ADR on June 20, 2023. *Id.* ¶ 6. Judge Phillips is an experienced and well-respected mediator who has for decades successfully mediated complex cases,

including countless consumer protection class actions. With the aid of Judge Phillips, the parties made substantial progress towards a settlement, though they were unable to reach an agreement on all material settlement terms. *Id.* Only after months of additional discussion and additional informal discovery did the parties reach agreement on all material terms. *Id.* ¶ 7–9. The Parties then turned to formalizing their agreement and resolving administrative matters with the assistance of Epiq. Those efforts ultimately culminated in the Settlement Agreement before the Court.

As detailed above, this Settlement Agreement is the result of protracted and vigorous arm's-length negotiations between the parties, all of which are represented by experienced counsel. *Id.* ¶¶ 1, 2, 5–9. The parties were able to accurately weigh the relative strengths of their claims and defenses based on the aforementioned informal discovery and extensive pre-suit investigation. *Id.* ¶¶ 2–4,7. In the end, their efforts bore fruit in the form of this Settlement Agreement, which provides prompt and comprehensive relief to the Class. As elaborated on below, the Settlement clearly satisfies the Rule 23 criteria for final approval.

### D. The Class

Once finally approved by this Court, the Settlement Agreement will provide prompt and comprehensive benefits to the following Class: All persons in the United States or its territories who, on or before January 23, 2023, purchased a Class Device.

S.A. § II.A.9. Excluded from the Class are Defendant and any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant; Defendant's legal representatives, assigns and successors; and all judges who have presided over the Action and any member of the judges' immediate families. *Id.* A Class Device is defined as any fitness equipment manufactured by iFIT or any of its past, present and future parents, predecessors, successors, spin-offs, assigns, holding companies, joint-ventures and joint-venturers, partnerships and partners, members, divisions, stockholders, bondholders, subsidiaries, related companies, or affiliates (including specifically, but without limitation, iFIT, Inc. fka ICON Health & Fitness, Inc. and Free Motion Fitness, Inc.) equipped with a Royal Wolf, Argon 1, or Argon 2 tablet, that was (1) purchased on or before January 23, 2023; and (2) connected to the iFIT network between November 1, 2021, and January 23, 2023. S.A. § II.A.10.

### E. The Settlement's Benefits

The Settlement makes available to Class Members differing categories of relief depending on the circumstances under which the defect manifested in their Class Device at any time between November 1, 2021 and May 6, 2025 (the end of the Claims Period). Device S.A. § IV.A. A Class Device's failure can be attributed to the Defect if the following symptoms manifest when the device is powered on: (a) permanently stuck on a white screen displaying the iFIT name and Logo bootloader screen; (b) permanently stuck on a black screen displaying the text "API:

3"; (c) permanently stuck on the Android Halo screen; (d) permanently stuck on a black screen with only the Bluetooth light turned on; (e) displays the text "iFit>", continuously reboots, and only displays the flashing text "iFit"; (f) permanently stuck on a screen displaying only "iFit"; (g) permanently stuck on a screen displaying only a chevron (">"); (h) permanently stuck on a screen displaying only a flashing chevron (">"); or (i) permanently stuck displaying a blank white screen. *Id.*

The four types of relief the Settlement makes available are:

1.    Repair Remedy

iFIT shall provide and install a replacement tablet or console at no cost for Class Members still in possession of a Class Device that failed due to the Defect and has not yet been repaired. S.A. § IV.B.

2.    Refund Remedy

 Class Members who are still in possession of a Class Device that failed due to the Defect and previously paid iFIT for repairs are entitled to a refund of any documented and verified repair costs paid to iFIT, including for diagnosis, replacement parts, and accompanying service. *Id.*

3.    Credit Remedy

For Class Members who previously (i) contacted iFIT about the Defect in a Class Device prior to the Notice Date, as reflected in iFIT's records, (ii) did not

receive a no-cost repair, and (iii) subsequently disposed of their Class Device, iFIT will compensate each such Class Member with a coupon for 20% off (up to a value of $600) toward the purchase of fitness equipment and/or service at either of www.nordictrack.com, www.proform.com, or www.workoutwarehouse.com, at the Qualified Class Member's election. *Id.*

> 4.    <u>Streaming Content Memberships</u>

In addition to the aforementioned remedies, any Class Member who on or before the Notice Date  (1) paid for an iFIT streaming content subscription membership and subsequently lost access thereto for one or more months because the tablet on their Class Device ceased to function and (2) contacted iFIT for repairs, but iFIT failed to repair or replace the tablet at no cost within a month of such a request being made, shall be eligible for 20% off a twelve month extension of that same subscription membership.

> 5.    <u>Customer Satisfaction Program</u>

Under the Settlement, iFIT may, at its discretion, also implement customer satisfaction programs to further customer goodwill towards its products. iFIT also may extend goodwill initiatives to individual members of the Class on a case-by-case basis at its discretion. *See* S.A. § IV.C.

### F. Attorneys' Fees, Costs, and Service Awards

On August 20, 2024, Plaintiffs filed their motion for attorneys' fees seeking $975,000 in attorney's fees and expenses, as well as $3,000 to each of the Plaintiffs in recognition of the time and effort committed to the Lawsuit. D.I. 36-1. Plaintiffs' requests are *in addition* to the aforementioned benefits provided to the Class and will in no way reduce the benefits made available to the Class. In addition, attorneys' fees and service awards were discussed only after the material terms of the Settlement were agreed upon. Counsel Decl. ¶ 9.

### G. Notice to Class Members

The Settlement Agreement includes a robust and comprehensive notice plan, which was paid for by iFIT. S.A. § V. Notice was overseen by Epiq, which accomplished notice through a combination of Email Notice and Mail Notice according to the terms of the Settlement Agreement and in the form mutually agreed upon by the parties. *See* S.A. § V(D); S.A. Exhibits 3–7. For Class Members for whom iFIT was able to locate a valid email address in its records, Epiq sent notice of the Settlement via email. S.A. § V(D)(2). For all Class Members for whom iFIT was unable to locate a valid email address or for whom the email notice was returned as undeliverable, Epiq sent notice of the Settlement by sending a postcard through the U.S. Mail. *Id.* Any postcards returned as undeliverable were remailed to a

forwarding address or an alternative address located though the National Change-of-Address Database. *Id.*

In addition, the Settlement Administrator established a Settlement Website (www. https://www.ifitconsolesettlement.com) that provided: (i) an online form submission form; (ii) information concerning deadlines for filing a Claim Form, and the dates and locations of relevant Court proceedings, including the Final Approval Hearing; (iii) the toll-free phone number applicable to the Settlement; and (iv) copies of the Settlement Agreement, the Notice of Settlement, the Claim Form, Court Orders regarding this Settlement, and other relevant Court documents. S.A. § V(D)(3). The Settlement Website also provided a table of applicable model numbers through which Class Members could look-up and determine whether they possess, or possessed, a Class Device. The established toll-free number dialed to an automated system that provided identical information to that available on the Website.

Following a review of iFIT customer records, Epiq identified 2,444,233 unique Class Members. Through combination of Email and Mail Notice, Epiq delivered notice to 2,072,370 Class Members, which represents 84.7% of identified Class Members. Azari Decl. ¶ 17. As Epiq explains in its declaration, per the Judge's Class Action Notice and Claims Process Checklist and Plain Language Guide, published by the Federal Judicial Center, it is reasonable to reach between 70–95%

of the Class. Azari Decl., ¶ 26. Although the Claims Period will not close until May 2025, as of October 21, 2024, 16,371 Class Members already have filed claims. Azari Decl. ¶ 23.

### H. Opt-Outs and Objections

As of the Opt-Out and Objection Deadlines, six (6) requests for exclusion, and three (3) objections were submitted.[3] Counsel Decl. ¶ 14. This represents an infinitesimal number of Class Members (approximately .0004% of all known members of the Class) and underscores the Settlement's strength. Of the six requests for exclusion, two were submitted by non-Class Members and thus are inapplicable and invalid. *Id.* ¶ 15. Of the three objections submitted, one was filed by a non-Class member (a resident of Canada); she voluntarily withdrew her objection after understanding she was not a Class Member. *Id.* ¶ 16; D.I. 34. The two remaining objectors requested refunds for devices they had already disposed of and replaced. *See* D.I. 35; D.I. 39. It is Class Counsel's understanding that both objectors have since agreed to withdraw their objection after resolving their concerns with iFIT under the customer satisfaction program offered by the Settlement, which resolutions are subject to the Court's approval. Counsel Decl. ¶ 16.

---

[3] No one objected to Class Counsel's request for fees and costs, or Plaintiffs' requests for Service Awards.

## I.  The Release

In exchange for the foregoing relief, and subject to the Court's final approval, Class Members that do not timely exclude themselves will be bound by a release of all claims arising from, related to, connected with, and/or in any way involving the Defect in Class Devices as alleged in the Action. The Release applies to the Released Parties, which include iFIT, iFIT Inc., NordicTrack, Inc., Free Motion Fitness, Inc., the manufacturer of the Class Device, and their related entities and affiliates. The Release does not apply to claims for personal injury, property damage, or subrogation. In addition, the Release does not cover the claims raised in *Pagano et al. v. NordicTrack Inc et al.*, Case No. 1:23-cv-00058 (D. Utah.).[4] S.A. § IX.C.

## J.  The Preliminary Approval Order

On April 5, 2024, this Court issued its Preliminary Approval Order. D.I. 33. This Court provisionally certified the Class, directed that notice to the Class begin, and scheduled the Final Approval Hearing for November 7, 2024 at 2:00 P.M. in Courtroom 4B of the United States Courthouse located at 844 North King Street, Wilmington, DE 19801. *Id.* at 6. Per the Preliminary Approval Order, Class Members had until September 3, 2024 to object or opt-out of the Settlement. *Id.* Class Members who did not opt-out have until May 6, 2025 to submit a claim.

---

[4] However, to the extent any members of the putative class alleged in *Pagano* also possess claims relating to the Defect, such claims are released.

## III.   ARGUMENT

Court approval is required for the settlement of class actions. Fed. R. Civ. P. 23(e). In order to grant final approval to the proposed class action Settlement, the Court must hold a hearing and find the settlement "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). While courts examine each settlement individually, they are guided by a "strong judicial policy in favor of class action settlement." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010). By entering into a voluntary settlement, the parties can benefit substantially by avoiding "costs and risks of a lengthy and complex trial." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995); *O'Hern v. Vida Longevity Fund, LP*, No. CV 21-402-SRF, 2023 WL 3204044 at *5 (D. Del. May 2, 2023). This is particularly true of class actions. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 784.

This Court preliminarily approved the Settlement Agreement, finding that it is fair, reasonable, adequate, entered into in good faith, free of collusion, and within the range of possible judicial approval. *See* Prelim. Approval Order, ¶ 2. Since that time, there have been no developments that would alter this conclusion. Based on the facts and arguments detailed herein, the Court should certify the Class for settlement purposes, and grant Final Approval to the Settlement.

### A.    The Settlement is Entitled to a Presumption of Fairness

A settlement qualifies for a presumption of fairness when the following factors are met: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re National Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d. Cir. 2016) (citing and quoting in part *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001)). *See also Vinh Du v. Blackford*, No. 17-CV-194, 2018 WL 6604484, at *5 (D. Del. Dec. 17, 2018); *In re Wilmington Tr. Sec. Litig.*, No. 10-CV-0990-ER, 2018 WL 6046452, at *4 (D. Del. Nov. 19, 2018); *O'Hern*, 2023 WL 3204044, at *5. The Settlement meets each of the foregoing criteria.

First, the Settlement is the product of protracted arm's length negotiations overseen by the Hon. Layn R. Phillips (Ret.) of Phillips ADR, one of the nation's most esteemed mediators. "The participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties." *Shapiro v. All. MMA, Inc.*, No. 17-2583 (RBK/AMD), 2018 WL 3158812, at *2 (D.N.J. June 28, 2018) (citation and internal marks omitted); *McDermid v. Inovio Pharms., Inc.*, No. CV 20-01402, 2023 WL 227355, at *4 (E.D. Pa. Jan. 18, 2023) (finding settlement entitled to presumption of fairness in part because "negotiations occurred at arm's length,

14

including via a nationally recognized mediator in securities matters"). *See also* *O'Hern*, 2023 WL 3204044, at *6; *Vinh Du*, 2018 WL 6604484, at *6; *In re Wilmington*, 2018 WL 6046452, at *4.

Second, the parties engaged in considerable pre-mediation discovery, including the production of highly sensitive, confidential and granular technical and engineering documentation, which enabled Plaintiffs to gain "a clear understanding of the strengths and weaknesses of their case" and confirm that the proposed Settlement is fair, reasonable, and adequate. *Udeen v. Subaru of Am., Inc.*, No. 18-17334 (RBK/JS), 2019 WL 4894568, at *3 (D.N.J. Oct. 4, 2019).

Third, Class Counsel have extensive experience litigating and resolving consumer class actions. They leveraged that experience in this case for the benefit of the Class, as evidenced by robust settlement presently before the Court. *McDermid*, 2023 WL 227355, at *4 (finding "Plaintiffs' counsel has well-documented experience handling securities class actions").

Finally, only a miniscule fraction of the Class has objected or opted out – only 0.0004% – demonstrating the Class' overwhelming support for the Settlement. *Id.* (finding "an initial presumption of fairness applied" in part because "only one class member objected to the settlement").

**B.    The *Girsh* Factors Support Preliminary Approval**

Having satisfied each of the requirements for a presumption of fairness, Plaintiffs turn to the *Girsh* multifactor test. Third Circuit courts consider the following factors when weighing final approval:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).[5]

The first *Girsh* factor, "the complexity, expense, and likely duration of the litigation", supports approval. The claims advanced on behalf of the Class Members

---

[5] Rule 23(e) was amended in December 2018 to specify uniform standards for settlement approval. Courts in this district have continued to apply the same legal standards to preliminary approval after the 2018 amendments. *See, e.g.*, *Udeen*, 2019 WL 4894568; *Smith*, 2019 WL 3281609. Further, "[t]he 2018 Committee Notes to Rule 23 recognize that, prior to this amendment, each circuit had developed its own list of factors to be considered in determining whether a proposed class action was fair[.]" *Huffman v. Prudential Ins. Co. of Am.*, 2:10-cv- 05135, 2019 WL 1499475, at *3 (E.D. Pa. Apr. 5, 2019) (citing Fed. R. Civ. P. 23(e)(2), Advisory Committee Notes). "[T]he goal of the amendment is not to displace any such factors, but rather to focus the parties [on] the 'core concerns' that motivate the fairness determination." *Id.* As such, the traditional *Girsh* factors continue to apply.

involve numerous complex legal and technical issues. Thus, absent the Settlement, the parties would be engaged in complex, time consuming and expensive litigation for years, with no certainty of a favorable outcome. Conversely, the Settlement secures substantial benefits for the Class without the delay, risk and uncertainty of continued litigation. *See McDermid*, 2023 WL 227355, at *7 (observing "this litigation required complex and skillful work on the party of both parties" and "[s]hould it continue, the parties would have to continue retaining experts, incurring additional expenses" and "[s]hould the case go to trial, Plaintiffs will have to obtain class certification and maintain the class through trial"); *Yaeger v. Subaru of Am., Inc.*, No. 14-cv-4490(JBS)(KMW), 2016 WL 4541861, at *9 (D.N.J. Aug. 31, 2016) ("The longer the litigation extended, the more the owners of affected class vehicles would suffer."); *In re Wilmington*, 2018 WL 6046452, at *5 (finding that class action involving review of "highly technical evidence" and expert reports would have been lengthy and costly).

This litigation was initiated due to hardware failures in Class Devices caused by the alleged Defect. Plaintiffs contend that iFIT should have repaired failed devices at no cost. The Settlement provides that exact relief: Class Members in possession of a Class Device that failed due to the Defect are eligible for free repairs, and Class Members who paid iFIT to repair their Devices are entitled to full refunds for such repairs.

The second factor supports also approval because the reaction of the class, as measured by the number of objections and opt-outs, demonstrates overwhelming support for the Settlement. Indeed, only 0.0004% of the more than 2 million Class Members opted-out or objected, a "truly insignificant" figure. *In re Prudential*, 148 F.3d at 318 (approving settlement despite 19,000 opt outs out of approximately 8 million policy holders, or 0.24%). *See also McDermid*, 2023 WL 227355, at *7 (finding eleven objections and one objection out of 576,695 notices to be "overwhelmingly positive"); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (finding that the second *Girsh* factor was satisfied when "only twenty-nine" out of 281 class members objected, which represents approximately a ten percent objection rate).

The three objections were submitted by Kathy Duff (D.I. 34), Bobby Sikes (D.I. 35), and Scott Mace (D.I. 39). The objection lodged by Kathy Duff should be disregarded in its entirety because Ms. Duff is not a resident of the United States, thus is not a member of the Class and therefore lacks standing to challenge the Settlement. *See In re Sunrise Sec. Litig.*, 131 F.R.D. 450, 459 (E.D. Pa. 1990) ("only class members have standing to object to a proposed class settlement"); *Rowe v. E.I. DuPont de Nemours & Co.*, No. 06-1810 RMB/AMD, 2011 WL 3837106, at *3 (D.N.J. Aug. 26, 2011) (same). Further, Ms. Duff ultimately withdrew her objection after Class Counsel advised her of this fact. *See* Counsel Decl.¶ 16.

18

The objections filed by Mr. Sikes and Mr. Mace are broadly similar. Mr. Sikes purchased a NordicTrack X22i in February 2024, which became inoperative, and which he later replaced with a NordicTrack S22 purchased in July 2024. D.I. 35; D.I. 35-1 at 2 & 5.[6] Mr. Sikes indicated that he believes the $600 credit towards a new replacement device is inadequate. D.I. 35. Mr. Mace purchased a NordicTrack X22i in October 2018, which began having issues in 2022 before becoming inoperative in early 2024. D.I. 39 at 4. After iFIT failed to satisfactorily resolve the issue, he disposed of the inoperative device and purchased a replacement from a competitor. *Id.* Mr. Mace similarly indicated that the $600 credit towards a new replacement device is inadequate. *Id.* at 7.

At bottom, each objector complains only that sufficient relief is not provided for Class Members. But "[t]o the extent objectors argue the settlement is not high enough because it does not allow 100% recovery of consumers' alleged loss," such objections are "without merit." *Rougvie v. Ascena Retail Grp., Inc.*, No. CV 15-724, 2016 WL 4111320, at *22 (E.D. Pa. July 29, 2016). *See also Parsons v. Brighthouse Networks, LLC*, No. 2:09-CV-267-AKK, 2015 WL 13629647, at *5 (N.D. Ala. Feb. 5, 2015) ("the reality of settlement is that what can be obtained through negotiation

---

[6] Because Mr. Sikes purchased his device after iFIX released a "fix" for the Defect, the parties do not believe Mr. Sikes is a Class Member. Plaintiffs nevertheless address his objection on the merits.

is, by its very nature, a compromise, and thus is normally something less than one's ideal recovery"); *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) ("compromise is the essence of settlement"); *United States v. City of Miami*, 614 F.2d 1322, 1344 (5th Cir.1980) (same*); Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) (internal citations omitted) (holding that a settlement is not insufficient because it fails to "provide all the relief desired"); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985) (holding that a settlement will not be rejected solely because it does not provide a complete victory to the plaintiffs). To the extent certain persons wish they were entitled to more, their objection should be overruled. Indeed, "[t]he test is whether the settlement is adequate and reasonable and not whether a better settlement is conceivable." *Id.* (quoting *In re Vitamins Antitrust Litig.*, 2000 WL 1737867, at *2 (D.D.C. Mar. 31, 2000)). And, in any event, this alternative form of relief, intended to provide concrete assistance to Class Members whose Devices could no longer be repaired, undoubtedly is "adequate and reasonable" as evidenced by the fact that more than 3,000 people already have claimed this remedy. Azari Decl. ¶ 23.

The third factor, the stage of the proceedings and the amount of discovery completed, also supports preliminary approval. Class Counsel conducted their own extensive independent investigation into the failures of the Class Devices. The parties also engaged in extensive informal discovery, including the exchange of

highly confidential data and documents that confirmed the scope and nature of the alleged defect, as well as the sufficiency of iFIT's fix. *Yaeger*, 2016 WL 4541861, at *9 (finding stage of proceedings supported final approval where plaintiffs' counsel "conducted its own investigation, researched and responded to numerous inquiries from class members, received and analyzed documents produced by defendants, and conducted confirmatory deposition discovery of defendant's Rule 30(b)(6) designated deponent"). *See also* O'Hern, 2023 WL 3204044 at *7 (finding stage of proceeding supported final approval where "Class Counsel had undertaken significant informal discovery by the time settlement negotiations began, including a review of many documents"); *In re Wilmington*, 2018 WL 6046452, at *5. The amount of discovery completed, considered alongside the considerable relief the Settlement makes available, supports approval.

The fourth, fifth, and sixth factors, which consider the risk of continued litigation, likewise weigh in favor of approval. Had the parties failed to resolve this case through the Settlement, further litigation would have been protracted and costly. Class Counsel have litigated many consumer protection class actions that have taken several years to conclude, and some have lasted over a decade when accounting for appeals. Before ever approaching a trial in this case, the parties likely would have fully briefed motions to dismiss, class certification (along with a potential Rule 23(f) appeal), *Daubert* motions, and summary judgment – in addition to expending

considerable resources on electronic discovery, depositions, and expert witnesses. It therefore is unlikely that the case would reach trial before 2026, with post-trial activity to follow. By that time, many Class Members would have experienced problems with their Class Devices, and without the benefits the Settlement affords. *See McDermid*, 2023 WL 227355, at *8 (observing continued hurdles at summary judgment, trial, and appeal were significant and further observing even if the Court granted class certification, "classes may be decertified or modified at any time if the class becomes unmanageable"); *Yaeger*, 2016 WL 4541861, at *9 (holding prospect of "protracted motion practice" involving the "nuances of various state laws" as well as "costly discovery" weighed in favor of settlement); *In re Wilmington*, 2018 WL 6046452, at *5–6 (finding that litigation over highly technical matters, that would require extensive expert testimony, would be lengthy, costly, and risky for the parties and strongly favor settlement); *Vinh Du*, 2018 WL 6604484, at *7–8; *O'Hern*, 2023 WL 3204044, at *7–8. Perhaps most importantly, the foregoing analysis presumes Plaintiffs' Complaint would have survived Defendant's anticipated motion to compel arbitration. During their pre-settlement discussions, iFIT's counsel indicated they will seek to compel arbitration. Counsel Decl. ¶ 5. iFIT had a credible chance of prevailing on its motion since iFIT *did* move to compel arbitration in the *Pagano* action and succeeded. *See Pagano et al. v. NordicTrack Inc et al.*, Case No. 1:23-cv-00058 (D. Utah.), D.I. 50.

Moreover, iFIT maintains that it has remedied the software bug that caused the Defect, and that it did not breach any express or implied warranties. *McDermid*, 2023 WL 227335, at *8 (noting defendants disputed liability for conduct at issue). In addition, iFIT maintains that most Class members have not experienced, and indeed may never experience, any alleged malfunction as a result of the Defect. Were litigation to continue, iFIT likely also would assert numerous defenses that could potentially prevent or substantially reduce certain Class Members' recoveries, such as statutes of limitation, lack of standing, lack of privity, and other common law and/or statutory defenses applicable to particular Class Members.

These individualized defenses render Class Members' individual claims anything but certain, and the prospects of class certification risky. And that is to say nothing of the numerous other individualized issues that could have undermined Plaintiffs' class certification efforts were litigation to continue, including: the circumstances surrounding each Class Member's purchase; whether and to what extent any Class Member experienced a hardware failure as a result of the software bug; and the circumstances and root causes of hardware failure in each Class Device. *Yaeger*, 2016 WL 4541861, at *10 ("This is a case requiring particular expertise about the design and servicing of engine oil systems, and the establishment of a defect for purposes of claims for breach of warranty was certainly questionable."). In addition, material differences in state laws among the 50 states could create

substantial obstacles to nationwide class certification. In contrast, these individualized issues do not preclude class certification for settlement purposes, since a settlement does not implicate the potential manageability concerns posed by a class trial. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Courts routinely find the seventh factor – the defendant's ability to withstand greater judgment – to be neutral. Such a factor is typically only relevant when "the defendant's professed inability to pay is used to justify the amount of the settlement." *In re NFL Players Concussion Injury Litig.*, 821 F.3d at 440; *O'Hern*, 2023 WL 3204044, at *7. This not a factor here.

Finally, the remaining *Girsh* factors – the range of reasonableness of the settlement both independently and weighed against the risk of further litigation – support approval. The settlement must be judged "against the realistic, rather than theoretical potential for recovery after trial." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 323 (3d Cir. 2011). In conducting this analysis, the court must "guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *California v. Teva Pharm. Indus.*, No. 19-3281, 2 2020 WL 3128027, at *6 (E.D. Pa. June 10, 2020); *see also In re Shop-Vac Mktg. & Sales Practices Litig.,* No. MDL No. 2380, 2016 WL 3015219, at *2 (M.D. Pa. May 25, 2016) ("The proposed settlement amount does not have to be dollar-for-dollar the

equivalent of the claim…. and a satisfactory settlement may only amount to a hundredth or even a thousandth part of a single percent of the potential recovery.") (internal citations and quotations omitted). The settlement provides full relief to the Class in the form of free repairs, reimbursements for repairs, and credit towards replacements. *McDermid*, 2023 WL 227355, at *8 ("Courts are instructed to compare the damages plaintiffs would likely recover if successful—discounted for the risk of not prevailing—with the amount of the settlement agreement."). Moreover, because the Settlement is not a traditional common fund, the recovery of the Class will not be reduced *pro rata* based on the number of claimants.

## C.    The *Prudential Factors*

The Third Circuit also permits courts to consider additional factors when evaluating whether to approve a class action settlement. In *In re Prudential*, the Third Circuit identified additional factors that the Court may consider the following factors in evaluating a settlement agreement:

> (1)    "the maturity of the underlying substantive issues, as measured by the experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages";
>
> (2)    the "existence and probable outcome of claims by other classes and subclasses";

(3)  "the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants";

(4)  "whether class or subclass members are accorded the right to opt out of the settlement";

(5)  "whether any provisions for attorneys' fees are reasonable"; and

(6)  "whether the procedure for processing individual claims under the settlement is fair and reasonable."

*In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 323 (3d Cir. 1998).

"Unlike the *Girsh* factors, each of which the district court must consider before approving a class settlement, the *Prudential* considerations are just that, prudential. They are permissive and non-exhaustive . . . ." *In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.*, 333 F.R.D. 364, 384 (E.D. Pa. 2019) (quoting *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013)).

The first *Prudential* factor is met here because the information disclosed by the parties, as well as Class Counsel's independent investigation performed and research into key legal issues has enabled the parties to gain a strong grasp of the case and the range of possible outcomes. *See id.* ("Here, Class Counsel were able to make an informed decision about the probable outcome of a trial."). The Parties therefore were able to make an informed decision prior to agreeing to the Settlement. *See also In re Wilmington*, 2018 WL 6046452, at *7.

"Factors two and three look at the outcomes of claims by other classes and other claimants." *Vista Healthplan, Inc. v. Cephalon, Inc.*, 2020 WL 1922902, at *23 (E.D. Pa. April 21, 2020). Class Counsel is unaware of other related class actions, one of which a federal court compelled to arbitration. *See* Sec. III(B), *supra*. Moreover, as stated above, Class Counsel contends that the Settlement constitutes a highly desirable outcome for the members of the Class. The *Pagano* action, which asserts claims for personal injury, is not related to this action and the Settlement Agreement explicitly excludes the claims brought in *Pagano* from the release.

Since the Settlement permits individuals to opt out of the Settlement, and only six (6) such requests were submitted, the fourth *Prudential* factor is satisfied. And as demonstrated in the Plaintiffs' recently filed motion for attorney's fees (D.I. 36), the attorney's fees sought in this action are reasonable. As a result, the fifth *Prudential* factor is met as well.

Last, the procedure for processing claims under the Settlement is also fair and reasonable. Here, Class Members need only submit a simple Claim Form— prepopulated with information from iFIT's records that establishes the recipient's entitlement to particular categories of relief—in order to avail themselves of the Settlement's benefits. Class Members also received Class Counsel's contact information in the event they had any questions regarding the Settlement or how to submit a claim. The *Prudential* factors are satisfied.

**D.     The Notice Plan Satisfied Due Process and Rule 23(e)**

Federal Rule of Civil Procedure 23(c)(2)(B) states that "the court must direct to all members who can be identified through reasonable effort." An experienced settlement administrator, Epiq Global, was selected to oversee the Notice Plan and used iFIT's internal data to prepare the customized Notice that was sent to Class Members. Epiq ultimately delivered direct notice to 2,072,370 Class members, which represents 84.7% of 2,444,233 identified Class Members. *See* Azari Decl. ¶ 17. The settlement website (www.iFitConsoleSettlement.com) received 88,246 unique visitors and 182,679 total page views; and the toll-free telephone line received 1,797 calls and provided 3,669 minutes of use *Id.*¶ 18, 19. As of October 21, 2024, 16,371 Class Members have filed claims: 13,138 claims for the Repair Remedy, 27 claims for the Refund Remedy, and 3,206 claims for the Credit Remedy. *Id.* ¶ 23. Furthermore, Epiq sent CAFA Notice Packages, pursuant to the federal Class Action Fairness Act, 28 U.S.C. § 1715, to the Attorney General of the United States, the Attorney Generals of the 50 states, the District of Columbia, and the U.S. Territories. *Id.* ¶ 6.

In addition to the requirements of Rule 23, due process further requires that notice be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *In re NFL Players Concussion Injury Litig.*, 821 F.3d at 435 (quoting

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950)). *See also Vinh Du*, 2018 WL 6604484, at *7–8. The above-described notice system and accompanying notice forms ensured that interested parties were made aware of the action and offered an opportunity to present their objections. Accordingly, the form and manner of the notice satisfies all applicable requirements.

Further, in granting preliminary approval, the Court observed that the Notice Plan satisfied "the requirements of due process, Rule 23 of the Federal Rules of Civil Federal Rules of Civil Procedure, the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and any other applicable laws, constitutes the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons." D.I. 33 at 3.  As such, the Notice Plan was executed as intended, which further supports Plaintiffs' request for final approval of the Settlement.

### E.    The Court Should Reaffirm Certification of the Class

In the Preliminary Approval Order, the Court conditionally certified the proposed Class for settlement purposes, concluding that certification of the Class satisfied the requirements of Rules 23(a) and 23(b)(3). D.I. 33 at 2. Nothing has changed since the Preliminary Approval Order, and no Class Member has challenged the propriety of the Court's certification of the Class. Accordingly, Class Counsel

respectfully request that the Court reaffirm those findings, grant final approval of this Settlement and certify the Class proposed here.

**F.    The Unopposed Motion for an Incentive Award and Fee Award Should be Approved**.

Because no objections were filed in opposition to Plaintiff's Motion for Attorneys' Fees, Costs, Expenses and Incentive Award (the "Fee Petition"), and because all factors in favor of granting final approval of the Settlement have been met, the Court should also approve the requested Incentive Awards to Plaintiffs and the Fee Award to Class Counsel. The fee petition was promptly uploaded to the Settlement Website and made publicly available for review. Neither Epiq nor Class Counsel have received any exclusions or objections referencing the Fee Petition. For the reasons stated in the unopposed fee petition, and because no Class Member has voiced any opposition or objection to the requested Attorneys' Fees and Expenses and Service Awards, Plaintiffs and Class Counsel respectfully request that the Court approve it.

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court reaffirm certification of the Class; issue an order granting final approval to the Settlement; approve the Unopposed Motion for Attorneys' Fees, Expenses, and Service Awards.

Dated: October 24, 2024

Respectfully submitted,

**Farnan LLP**

By:    /s/ Michael J. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
Telephone: 302-777-0300
Facsimile: 302-777-0301
mfarnan@farnanlaw.com
bfarnan@farnanlaw.com

Daniel O. Herrera
Alex Lee
**Cafferty Clobes Meriwether
& Sprengel LLP**
1350 S. LaSalle St., Suite 3200
Chicago, Illinois 60603
Telephone: (312) 782-4880
Facsimile: (312) 782-4485
dherrera@caffertyclobes.com
alee@caffertyclobes.com

Joseph G. Sauder
Joseph B. Kenney
**SAUDER SCHELKOPF LLC**
1109 Lancaster Avenue
Berwyn, Pennsylvania 19312
Telephone: (610) 200-0581
Facsimile: (610) 421-1326
jgs@sstriallawyers.com
jbk@sstriallawyers.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF COMPLIANCE</u>

The foregoing document complies with the type-volume limitation of this Court's November 10, 2022 Standing Order Regarding Briefing In All Cases. The text of this brief, including footnotes, was prepared in Times New Roman, 14 point font. According to the word processing system used to prepare it, the brief contains 6,994 words, excluding case caption, signature blocks, table of contents, and table of authorities.

Dated: October 24, 2024         */s/ Michael J. Farnan*
                                Michael J. Farnan (Bar No. 5165)